IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,846

STATE OF KANSAS,
*Appellee*,

v.

BENJAMIN A. BALLARD,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 22-4905(f), a provision of the Kansas Offender Registration Act, K.S.A. 22-4901 et seq., requires a transient offender to register every 30 days, or more often at the discretion of the registering law enforcement agency.

2.

K.S.A. 22-4902(l) defines transient as having no fixed or identifiable residence, and K.S.A. 22-4902(k) defines a residence as a particular and definable place or places where an individual resides. Under K.S.A. 22-4902(j) reside means to stay, sleep, or maintain with regularity or temporarily one's person and property in a particular place. K.S.A. 22-4902(j) also creates a presumption that an offender resides at any location where the offender stays, sleeps, or maintains the offender's person and property for 3 or more consecutive days or parts of days, or for 10 or more nonconsecutive days in a period of 30 consecutive days.

3.

A district judge committed clear error by failing to instruct a jury on the statutory definitions of transient, residence, and reside found in K.S.A. 22-4902(j)-(l) when the

1

State's evidence of the offender's transient status was sparse, some evidence supported a jury determination the offender was not transient, the definitions in the Kansas Offender Registration Act relating to transient status vary from commonly understood definitions, and the State's witnesses provided definitions inconsistent with the statutory language.

Review of the judgment of the Court of Appeals in an unpublished opinion filed January 26, 2024. Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Oral argument held September 11, 2024. Opinion filed April 11, 2025. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded.

*Grace E. Tran*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.:  The State charged Benjamin Ballard with two counts of failing to register as an offender under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq. A jury convicted him on both counts. One conviction arose from his failure to register during his birthday month as required by K.S.A. 22-4905(b). Ballard does not appeal this conviction, and it is not before us. The second conviction arose under K.S.A. 22-4905(f), which requires transient offenders to register every 30 days, or more often at the discretion of the registering law enforcement agency. Ballard appeals from this conviction, which relates to a failure to register in September 2021.

Ballard argues two issues relating to that conviction. He first contends that the State failed to present sufficient evidence that he was a transient offender who failed to register as ordered. Second, he contends the district judge committed a clear error by not

instructing the jury on KORA's definition of transient and the related KORA definitions of reside and residence.

We agree with Ballard's second argument and hold the district judge erred by failing to instruct the jury on KORA's definitions. Because we are firmly convinced the jury would have reached a different verdict if properly instructed, we hold the error was clear and we reverse Ballard's conviction for failing to register as a transient. We reject Ballard's other argument that the State failed to present sufficient evidence, however. We hold that the evidence, when viewed in the light most favorable to the State, would allow a properly instructed and rational jury to find Ballard guilty beyond a reasonable doubt. We thus remand to the district court for additional proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Ballard moved to Kansas in 2010. Under KORA, Ballard was required to register as a lifetime sex offender due to a prior Arkansas criminal conviction for second-degree sexual assault. He did so by reporting to the Sedgwick County Registration Unit and completing a "Kansas Offender Registration Form." In completing the form, he provided a physical address and signed an acknowledgment of offender registration requirements.

The nature of Ballard's Arkansas offenses put him in a category of offenders who must register throughout their lifetimes. Over time, the Legislature has altered the requirements relating to those registrations. Ballard's convictions—both the one he now appeals and the one he does not appeal—arose from failures to register in 2021.

In 2021, KORA required sex offenders such as Ballard to report quarterly—once in the month of their birthday and then quarterly in every third, sixth, and ninth month after that. K.S.A. 22-4905(b). Ballard's birthday is in October, and he was charged with failing to register during October 2021. Again, he does not contest that conviction before

3

us. But he does appeal from a second count that relates to additional reporting requirements imposed on registrants classified as transient offenders.

Transient offenders must register every 30 days, or more often at the discretion of the registering law enforcement agency. K.S.A. 22-4905(f). Two Sedgwick County Sheriff's Registration Unit employees testified they had classified Ballard as a transient offender and told him to report every 30 days. But they had no record showing that he complied with that direction in September 2021.

One of the Sedgwick County Sheriff's Offender Registration Unit employees who testified at trial was Lena Kastner. She explained that she maintains records and helps offenders as they register. She testified that Ballard reported for his quarterly registration in July 2021 and then "[p]rior to his registration in August he had reported that he was transient, so he was marked in our system as such." When asked to define what she meant when she said Ballard was a transient offender, she told the jury the term applied to those who "don't have a permanent place to stay." She added that the registration unit would remove someone from transient status if they "report that they have a permanent place to reside." Once classified as transient, the registration unit asks offenders to "give us a list of anywhere that they sleep or hang out, basically anywhere that we can find them, whether it's intersections. If it's couch surfing, we ask for the address of the houses or wherever it is they stay." Transient offenders are told they must report to the registration unit every 30 days until they have a permanent residence.

Ballard returned to the registration unit in August 2021 and completed a "Registration Change of Information Form." The form included a space for a current physical address, and Ballard provided an address. Evidence at trial established that Ballard's brother, John Ballard, lived at the address Ballard provided. Kastner told the jury that Ballard told her "[h]e goes . . . during the day" to his brother's house. But she also testified that Ballard wrote in a section of the form, which had no heading or written

4

directions, that he "walk[s] around Broadway and the Lord's Diner." Kastner explained this form doubles as a transient form and that Ballard writing where he walks around "indicates to us that he was transient."

The second registration unit witness who testified about Ballard's transient offender classification was Sedgwick County Sheriff's Deputy Michael Clopton. In November 2021, the deputy learned that Ballard had failed to register during his birth month in October 2021, and he began an investigation. During his investigation he discovered there was no record of Ballard registering in September 2021 as required because of his transient offender classification. At Ballard's trial, Clopton testified in general terms about policies at the Offender registration unit and his attempts to locate Ballard. When Clopton was asked why Ballard was classified as a transient offender, he answered, "He had no permanent address." Clopton also explained that Ballard's transient status meant that he had to report monthly "[u]nless he gets a permanent address. Once he gets a permanent address then he would only have to check in during the four months required for him." He also testified that occasionally transients will provide "an actual address" but will say "that they only stay there from time to time but normally they're homeless, at which point in time they also provide locations where they may frequent, sleep near, intersections, shelters, et cetera. His was one of those."

The third witness called by the State who testified at trial about offender registration requirements, including those applying to transient offenders, was a records custodian for the Kansas Bureau of Investigation. When asked to define a transient offender, this witness said a transient was "an offender who has no known physical address."

Ballard called his brother, John, as a witness. John told the jury that Ballard "[p]retty much" lived with him through August 2021 until the second week in October 2021. John testified that during that time Ballard slept on his couch every day and ate his

5

food. Ballard's attorney asked John, "If somebody had asked you in September of 2021 where was your brother living, would you have told him your address?" Ballard's brother answered, "Yes." He gave the same answer when asked about the first two weeks of October. He explained that Ballard moved out around the second week of October 2021 because John's wife had trouble living with Ballard, who had mental health issues.

Ballard's transient status also came up during the parties' closing argument, the prosecutor twice told the jury that Ballard was transient because he had no permanent address and was "living on the couch" and walking around Broadway and the Lord's Diner. The prosecutor argued:

> "[John Ballard] says that the defendant at that point lived on his couch. The defendant had *no permanent address*. He was still known as a transient offender at the Offender Registration Unit. He was living on the couch and during the day at his last registration he said that he walked downtown around Broadway and the Lord's Diner." (Emphasis added.)

She also argued: "He notified them that he was transient. . . . He had no permanent address."

Ballard's counsel countered that Ballard was not actually transient because he was staying with his brother during September 2021. Ballard's counsel also argued that Ballard had registered in September and October, but the registration unit had lost the records. He asked the jury to infer this conclusion from John's testimony that he recalled driving Ballard to the registration unit's office in both those months so Ballard could register.

The jury convicted Ballard of both counts charging a failure to register. As we have noted, Ballard appealed only the conviction for failing to register every 30 days as a transient offender as required by K.S.A. 22-4905(f). The Court of Appeals affirmed his

6

conviction. *State v. Ballard*, No. 125,846, 2024 WL 296289 (Kan. App. 2024) (unpublished opinion). The Court of Appeals panel held there was sufficient evidence of Ballard's transient status, pointing to the testimony of Kastner and Deputy Clopton. Addressing the jury instruction error, the panel held a jury instruction about the KORA definitions would have been legally and factually appropriate. 2024 WL 296289, at *6-7. But it held the instruction was not a clear error. 2024 WL 296289, at *7-8.

Ballard timely petitioned this court, seeking review of the panel's determination that the failure to instruct the jury on the KORA definitions was not a clear error. We granted his petition and have jurisdiction under K.S.A. 20-3018(b) (allowing jurisdiction over petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions on petition for review).

ANALYSIS

Ballard has preserved two issues for our review: (1) Did the district judge commit a clear error by not instructing the jury on KORA's definition of transient and of words integral to that definition, specifically reside and residence? and (2) Did the State fail to present sufficient evidence to support his conviction? This second issue includes two arguments, as Ballard contends the State failed to present sufficient evidence that (a) Ballard was a transient offender and (b) that he failed to register in September and October 2021. We begin with a discussion of his contention that a jury instruction error tainted his trial to the extent a clear error requires us to reverse his conviction.

ISSUE 1: CLEAR ERROR NOT TO INSTRUCT ON UNCOMMON, STATUTORY DEFINITIONS

Ballard concedes that he did not ask the district judge to instruct the jury on its need to decide whether Ballard was a transient offender or on KORA's definition of transient, reside, and residence. But he contends the judge clearly erred by not giving

7

those instructions. He argues KORA's definitions of those words differ significantly from the common understanding of those terms and from various witnesses' explanations to the jury about what those terms mean under KORA. He also contends under those definitions he was not a transient offender and not giving the instructions was thus a clear error.

The State responds by arguing clear error did not occur. It asserts: (1) the evidence against Ballard was overwhelming; (2) the jury instructions explained the jury needed to determine that Ballard was transient; (3) the term transient was defined in the evidence through the testimony of witnesses and this evidence was consistent with a common understanding of the terms transient, reside, and residence; (4) Ballard asks us to reweigh the evidence to accept John's testimony that the jury did not accept; and (5) Ballard's primary defense was that his registrations in September and October were lost by the registration unit, not that the State failed to prove his transient status. We note that the State has not disputed Ballard's position that the jury needed to decide whether he was a transient offender. It thus has waived any argument that determination of transient status was not an elemental question of fact for the jury to resolve. See *State v. Stuart*, 319 Kan. 633, 639, 556 P.3d 872 (2024) ("'When a party fails to brief an issue, that issue is deemed waived or abandoned.'").

*Standard of Review*

In considering these arguments, we use a three-step standard of review that applies to jury instruction challenges in criminal cases. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018). Under the first step, we determine whether the issue is reviewable—that is, whether there is appellate jurisdiction and whether the issue is sufficiently preserved for our review. 307 Kan. at 317. Under the second step, we analyze whether the instruction is legally and factually appropriate; this involves a merits determination of whether there was error. 307 Kan. at 317-18. Under the third step, which we reach only if our step two

8

analysis leads to the conclusion the judge erred in instructing the jury, we examine whether the jury's verdict should be reversed. 307 Kan. at 318.

Here, no argument suggests we lack appellate jurisdiction. And while Ballard concedes he did not ask the district judge to give the instruction he now seeks, he argues the clearly erroneous exception in K.S.A. 22-3414(3) applies. Stating this exception, K.S.A. 22-3414(3) directs that "[n]o party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires . . . [or] unless the instruction or the failure to give an instruction is clearly erroneous." Ballard thus presents an argument that satisfies the first step.

As to the second step, the Court of Appeals panel held an instruction setting out KORA's definitions of transient, residence, and reside would have been factually and legally appropriate. See *Ballard*, 2024 WL 296289, at *6-7. Because the State did not cross-petition or conditionally cross-petition for review to ask us to consider that aspect of the panel's decision, the issue was resolved against the State and is not preserved for our consideration. See Supreme Court Rule 8.03(c)(3), (c)(4) (2024 Kan. S. Ct. R. at 57) (failure to raise adverse rulings or questions not addressed through a petition, cross-petition, or conditional cross-petition for review usually means the question is unpreserved and will not be considered); *State v. Cantu*, 318 Kan. 759, 763, 547 P.3d 477 (2024) (same).

This brings us to the third step—reversibility. Here, because Ballard failed to request instructions on KORA's definitions of transient, residence, and reside, he has the burden of establishing clear error. This means he must firmly convince us the jury would have reached a different verdict but for the error. *McLinn*, 307 Kan. at 318.

9

We turn to the State's five arguments as to why Ballard fails to meet this burden. We will address them in a different order than presented by the State and sometimes combine them. We turn first to the State's second and fifth arguments.

1. *Question of transiency not put to the jury*

In one of its arguments, the State contends the difference between the jury instruction for counts one and two makes clear the jury should only convict Ballard for failing to register in September if he was indeed transient. It points out that the two instructions setting out the elements for each count were adapted from PIK Crim. 4th 63.140. The two instructions had some identical language but differed in the phrasing of two elements.

We start with the similarities in the instructions that stated the elements of the two offenses. The instructions began by telling the jury that the State must prove the listed elements. Then both used similar wording in stating the first and fourth (of four) elements. The first element in both instructions stated the State had to prove that "Benjamin Ballard had been convicted of Second[-]Degree Sexual Assault in Sebastian County, Arkansas case CR-2004-264." The fourth element in both instructions focused on whether the State proved that Sedgwick County was the appropriate venue for Ballard to register. The wording of this element in the two instructions was not identical. But the prosecutor explained during the State's closing argument that the fourth element of each instruction meant the same thing and that one thing was undisputed: Ballard "was required to register in Sedgwick County, Kansas because he was here and he was convicted of that charge in Arkansas. It's a lifetime registration. So these two facts go towards elements number one and four in both instructions." As explained by the prosecutor, neither element one nor four tasked the jury with deciding whether Ballard was transient; rather they directed the jury to determine whether Ballard committed the crime in Arkansas that led to the registration requirement and whether he was in

10

Sedgwick County in September and October 2021. Ballard did not dispute either of those elements.

He, however, did dispute the other two elements. But neither directed the jury to consider whether Ballard met the definition of transient.

Element two in the instruction relating to the transient offender violation read: "Benjamin Ballard failed to register every 30 days, *as ordered by the Sedgwick County Sheriff due to his transient status*." (Emphasis added.) Read in isolation this sentence tells the jury the question before it was whether Ballard failed to register as ordered by the sheriff. That is a different question than asking the jury to consider whether the sheriff, acting through the registration unit, properly classified Ballard as transient. Further, contrary to the State's argument, we find no clarity when we compare this point to the second element of the other instruction, which read: "Benjamin Ballard failed to report in person to the Sedgwick County Sheriff during his birth month of October." Both elements instruct the jury to determine whether Ballard failed to report; neither ask the jury to determine whether the reporting obligations properly attached under KORA.

The third element told the jury it must find the offense occurred on or about a certain date, October 1, 2021, in the instruction relating to the charge that Ballard failed to report within 30 days of his last report as required because the registration unit classified him as a transient offender, and November 1, 2021, in the instruction relating to his charge for failing to report in his birthday month. Again, no language suggested the need to determine whether Ballard was a transient offender.

We thus reject the State's argument that the instructions directed the jury to decide whether Ballard was a transient offender. Instead, the wording of elements two and three left no room for the jury to weigh the evidence to determine whether Ballard was a transient offender as defined by KORA. The instruction about transiency told the jury

11

that Ballard had to report as ordered because the registration unit had determined he was a transient offender. The wording thus weighs in favor of Ballard's argument that a clear error occurred.

The fact that the instruction is patterned after PIK Crim. 4th 63.140 does not prevent us from determining the instruction was erroneous. Nor does the fact that the pattern jury instructions do not include an instruction setting out proof of transitory status as an element. We have long said that a district judge should not hesitate to modify the PIK instructions when required. *State v. Whitaker*, 255 Kan. 118, 124, 872 P.2d 278 (1994). And here Ballard argued the evidence did not support that he was a transient offender, yet the jury was not asked to decide that question. On appeal, the State's argument is that the instructions adequately allowed the jury to reach the question of whether Ballard was properly classified as a transient offender, not that the jury need not decide that question. As we have noted this means the State has waived any argument that determination of transient status was not an issue for jury determination. See *Stuart*, 319 Kan. at 639. And, contrary to the State's fifth argument, it does not matter that this defense was not Ballard's primary defense. He raised the issue and put it in dispute.

In sum, Ballard's defense on the charge he failed to register as a transient offender included arguments that he was not transient, and the jury needed to be instructed to consider his defense. We thus reject the State's second and fifth arguments. As we will discuss next, the district judge also needed to instruct the jury on KORA's definitions.

2. *Evidence inaccurately defined terms and misled jury*

The State argues that KORA's definition of "transient" and the related definitions of "residence" and "reside" are consistent with a common understanding of those words, so the judge did not err by failing to instruct the jury on the KORA definitions. It also argues that the judge did not need to instruct the jury on the definitions because witnesses

12

during the trial explained KORA's definition of transient. We again reject the State's argument, concluding instead that KORA's definitions differ from common definitions of the words and that the witnesses reinforced those common meanings rather than accurately explaining KORA's definitions.

Despite disagreeing with the State's ultimate position, we agree with the legal foundation of its argument, which is that judges need not define all legal terms used in jury instructions. After all, we have stated that "[i]f the jury instructions properly and fairly stated the law and were not reasonably likely to mislead the jury, then no error exists for this court to correct" and "'it is immaterial if another instruction, upon retrospect, was also legally and factually appropriate, even if such instruction might have been more clear or more thorough than the one given.'" *State v. Coleman*, 318 Kan. 296, 313, 543 P.3d 61 (2024). We have also recognized that the failure to define a term used in a jury instruction is not always error. This is because "jurors may use their common knowledge and experience when assessing witness testimony and examining evidence and may apply their understanding of the common, ordinary words." *State v. Hambright*, 318 Kan. 603, 607, 545 P.3d 605 (2024). But this rule rests on an assumption the Legislature has used the "ordinary, contemporary, common meaning" of the term. 318 Kan. at 608.

Here, the Legislature has defined words, and, contrary to the State's argument, the KORA definitions are inconsistent with ordinary, contemporary, and common meanings of the terms. Further, we conclude the witnesses' testimony misled the jury about the KORA definitions. To explain how we reached these conclusions, we will examine KORA requirements, KORA definitions, and the evidence relating to whether Ballard's situation met those definitions and contrast that with ordinary, contemporary, and common definitions of the words.

13

We begin with the term "transient" because that status triggered the requirement that Ballard register every 30 days. Under KORA, transient "means having no fixed or identifiable residence." K.S.A. 22-4902(l). As the State points out, the records custodian for the KBI testified to a similar definition, saying that a transient was "an offender who has no known physical address." Ballard provided a known physical address in August 2021, shortly after the registration unit classified him as transient, when he completed the "Registration Change of Information Form" that asked for his "current physical address." This provided some evidence that Ballard was not transient.

But registration unit employees testified that listing this physical address did not remove Ballard from transient status because it was not a *permanent* address. K.S.A. 22-4902(l) does indirectly refer to a permanent situation when it uses the term "fixed residence." Fixed is commonly understood to mean something "not subject to change or fluctuation." Merriam-Webster.com Dictionary. But K.S.A. 22-4902(l) alternatively allows for an "identifiable residence." Listing the alternatives suggests the Legislature meant something different. See *State v. Edwards*, 318 Kan. 567, 572, 544 P.3d 815 (2024) (courts give meaning to words chosen by Legislature, without adding or deleting words). KORA explains the meaning through its definition of residence found in K.S.A. 22-4902(k).

K.S.A. 22-4902(k) clarifies that one can have more than one residence, stating: "Nothing in the Kansas offender registration act shall be construed to state that an offender may only have one residence for the purpose of such act." It also defines the word residence to "mean[] a particular and definable place where an individual resides." K.S.A. 22-4902(k). To see whether that means a permanent place as the State suggests we turn to KORA's definition of reside, and we find that rather than requiring a permanent place it explicitly allows a temporary place to be a residence.

14

K.S.A. 22-4902(j) defines reside, explaining it means to "stay, sleep or maintain with regularity or temporarily one's person and property in a particular place other than a location where the offender is incarcerated." Beyond clarifying that a location need only be used temporarily and for one of three purposes—as (1) a place to stay, (2) a place to sleep, *or* (3) a place to maintain one's person and property—the provision establishes a presumption: "It shall be presumed that an offender resides at any and all locations where the offender stays, sleeps or maintains the offender's person for three or more consecutive days or parts of days, or for ten or more nonconsecutive days in a period of 30 consecutive days." K.S.A. 22-4902(j).

Under these definitions, a permanent or fixed residence is only one option. Offenders may register one or more identifiable residences by designating places where they temporarily stay, sleep, or maintain their person and property. And a presumption that they reside at any such location arises if the offenders meet the 3, consecutive day or the 10, nonconsecutive day minimums of K.S.A. 22-4902(j). These requirements differ significantly from the registration unit employee's testimony defining a transient offender as one without a permanent address and from the prosecutor's repeated argument to the jury that Ballard was a transient offender because he lacked a permanent address.

The KORA definitions also differ from other legal and common definitions. For example, the statutory definition of "residence" that applies when any Kansas statute uses the word without definition, K.S.A. 77-201 *Twenty-third*, defines residence to be "the place which is adopted by a person as the person's place of habitation and to which, whenever the person is absent, the person has the intention of returning. When a person eats at one place and sleeps at another, the place where the person sleeps shall be considered the person's residence." Unlike the definition of residence in KORA that specifically allows for more than one residence, K.S.A. 77-201 *Twenty-third* provides tests for determining one place of residence. The general definition also imposes an intent to return to that place whenever absent, but KORA has no such requirement.

15

The KORA definitions also contrast with the dictionary definitions cited by the State. It cites Merriam-Webster's Online Dictionary, which defines the verb "reside" to mean "to dwell *permanently* or *continuously*:  occupy a place as one's legal domicile." (Emphasis added.) Merriam-Webster.com Dictionary.  In contrast, KORA's definition of reside does not use the words permanently or continuously and instead uses the words "with regularity or temporarily." Likewise, the dictionary definition of "residence" eliminates temporary quarters from its definition of the noun "residence," which it defines as "(1)(a):  the act or fact of dwelling in a place for some time . . . (2)(a)(1): the place where one actually lives as distinguished from one's domicile or a place of *temporary* sojourn." (Emphasis added.) Merriam-Webster.com Dictionary.

The dictionary definition of transient—as both an adjective and a noun— emphasizes the brief or temporary nature of a stay:  (Adjective):  "(1)(b) passing through or by a place with only a brief stay or sojourn/ *transient* visitors." (Noun):  "(1) one that is transient (see TRANSIENT entry 1):  such as [a]:  a guest or boarder who stays only briefly [b]:  a person traveling about usually in search of work." Merriam-Webster.com Dictionary. But KORA creates a presumption that one can reside at a place when an offender stays at a location for as short as three days. And KORA allows moving from place to place if the offender stays at one location for at least 10 nonconsecutive days in a 30-day consecutive period.

These common definitions thus differ significantly from the KORA definitions. But we find no place in the trial record where there was any discussion or testimony about the KORA definitions or how they depart from common usage. Instead, Kastner, Deputy Clopton, and the prosecutor repeatedly told the jury that offenders are considered transient if they do not have a *permanent* address and the way they could be removed from transient status is to provide a *permanent* address. Yet, the definition of "reside," which informs the meaning of the word transient in KORA, specifically allows for

16

temporary situations. Having a permanent address is just one way to avoid being a transient offender, not the exclusive route. But the registration unit employees did not recognize these alternatives. This is significant because the State relied heavily on these employees' opinions and their classification of Ballard in proving its case.

We thus conclude the differences between KORA definitions and definitions provided by the witnesses and by the prosecutor in closing argument and the differences between KORA definitions and the common understanding of the words weigh toward determining the lack of a jury instruction defining terms was clear error.

3. *Clear error*

We address the remaining two parts of the State's other arguments jointly, as they involve some facet of consideration of the evidence. The State argues, first, that overwhelming evidence establishes that Ballard was transient and, second, that Ballard asks us to reweigh the evidence because the jury rejected his defense that was primarily presented through his brother John's testimony. But these arguments are made from the perspective that the State sees no light between the KORA definitions and a common understanding of the words reside, residence, and transient. Yet, as we have discussed, there are significant differences.

As to the point there was overwhelming evidence, this conclusion rests on the State's argument that Ballard was transient because he lacked a permanent address. But as we have discussed, proving he had no permanent residence does not necessarily prove he was a transient offender. Alternatively, Ballard could have had an identifiable residence, and Ballard identified a specific place when he listed John's address as his current physical address on the "Registration Change of Information Form" in August 2021. He also told Kastner, as she recited during her trial testimony, that he went to his brother's every day. That evidence alone, without reliance on John's testimony, could serve as the

17

basis for a reasonable jury to determine that Ballard resided at John's house during September 2021 because he stayed, slept, or maintained his person and property at John's house for three or more consecutive days or 10 or more nonconsecutive days in a 30-day period. See K.S.A. 60-413 ("A presumption is an assumption of fact resulting from a rule of law which requires such fact to be assumed from another fact or group of facts found or otherwise established in the action."); *State v. Holder*, 314 Kan. 799, 802, 502 P.3d 1039 (2022) ("Presumptions in this context operate when one fact's existence is allowed to follow from proof of another fact."). We can reach this conclusion de novo and without reweighing evidence because we presume jurors follow instructions. *State v. Dotson*, 319 Kan. 32, 45, 551 P.3d 1272 (2024).

The Court of Appeals reached the conclusion that the definitions would not have changed the outcome because the jury apparently rejected John's testimony which provided evidence that Ballard resided at John's house. The panel reasoned that in reaching the verdict that Ballard failed to register during his birth month—the issue not before us—"the jury weighed competing testimony and made a credibility determination against John's testimony about whether Ballard registered in September 2021 and October 2021 and whether Ballard lived with him from August 2021 until mid-October 2021." 2024 WL 296289, at *7. The panel concluded that without reweighing the evidence and giving credence to John's testimony the verdict would not change.

As we have discussed, however, the State presented evidence supporting Ballard's defense. John's testimony verified what Ballard reported to Kastner about his pattern of going to John's house every day, but the same point was made through the State's evidence. Further, the definitions would change the perspective of how the jury weighed John's testimony, especially because none of the State's evidence undercut John's testimony that Ballard stayed at his house during the entire month of September and the first two weeks of October.

We thus conclude the State presented scant evidence of Ballard's transience when the entire record is viewed through the perspective of the KORA definitions. That scant evidence—mostly the testimony of Kastner and Clopton and even Ballard's report of transiency—baked in inaccurate definitions of "transient" that failed to incorporate the statutory definitions or the presumption in K.S.A. 22-4902(j). The State then repeated and highlighted that misleading testimony during its closing argument. Under these circumstances, we are firmly convinced that the jury would have reached a different verdict had it received the tools to understand KORA's definitions of transience, residence, and reside rather than being left to rely on common meanings of those words that differ significantly from how KORA defines them. This clear error requires us to reverse Ballard's conviction.

ISSUE 2: SUFFICIENT EVIDENCE

Ballard also argues the State failed to present sufficient evidence of guilt. Although we have already determined jury instruction error requires setting aside his verdict, we must still consider his sufficiency argument because no retrial would be possible if the evidence were insufficient to convict. *State v. Scott*, 285 Kan. 366, 372, 171 P.3d 639 (2007) ("If an appellate court holds that evidence to support a conviction is insufficient as a matter of law, the conviction must be reversed; and no retrial on the same crime is possible.").

In considering this issue, we "review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Buchanan*, 317 Kan. 443, 454, 531 P.3d 1198 (2023). In that review, we do not reweigh evidence, resolve evidentiary conflicts, or weigh witness credibility. 317 Kan. at 454. That is the job of the jury. Thus, while we are firmly convinced a jury hearing the same evidence as presented at the first trial and properly instructed *would* have reached a different conclusion if properly instructed, we

19

recognize the possibility a reasonable jury viewing the evidence in the light most favorable to the State could find Ballard guilty.

As we have discussed, the evidence supporting Ballard's transient status is hardly overwhelming, primarily coming from the personal assessments of personnel in the registration unit that Ballard was transient because he lacked a *permanent* address. Even so, there was testimony that Ballard reported he was transient. And critically for our sufficiency analysis, Deputy Clopton also testified that a transient offender is one:

> "who does not have a home, does not have a residence. Every once in a while we will have a registered offender who registers as transient that will put down an actual address. However, they . . . will state that they only stay there from time to time but normally they're homeless, at which point in time they also provide locations where they may frequent, sleep near, intersections, shelters, et cetera. *His was one of those.*" (Emphasis added.)

Because we do not reweigh evidence, resolve evidentiary conflicts, or judge credibility, we hold that this testimony and Ballard's self-report of transiency, viewed in the light most favorable to the State, is sufficient for a jury to find beyond a reasonable doubt that Ballard is guilty of failing to register every 30 days as a transient offender. See *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

CONCLUSION

We reverse Ballard's conviction for the count of failing to register every 30 days as a transient offender because of the jury instruction error. Finding the evidence sufficient when viewed in the light most favorable to the State, we remand for further proceedings on this count.

20

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded to the district court for further proceedings.

* * *

ROSEN, J., concurring and dissenting: I agree with most of the majority's analysis and its decision to reverse Benjamin Ballard's conviction to register every 30 days as a transient offender. But I dissent from its decision to remand the case for further proceedings on that count because I would hold the evidence was insufficient to prove Ballard was transient when he failed to register in September 2021. I would reverse that conviction and direct the lower courts to dismiss the count against Ballard. See *State v. Scott*, 285 Kan. 366, 372, 171 P.3d 639 (2007) ("If an appellate court holds that evidence to support a conviction is insufficient as a matter of law, the conviction must be reversed; and no retrial on the same crime is possible.").

STANDRIDGE, J., joins the foregoing concurring and dissenting opinion.

21